UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Midwest Agriculture Warehouse Co.,

Plaintiff,

v.

American Prairie, Inc;
Clayton Petersen; Ryan Bushman;
Green Star Agricultural Services, Inc.;
and American Prairie of Iowa, Inc.,

Defendants.

Civil No. 01-68 RHK/JMM
**MEMORANDUM OPINION AND ORDER**

---

Charles F. Webber and Lianne C. Knych, Faegre & Benson, LLP, Minneapolis, Minnesota, for Plaintiff.

Thomas P. Melloy, Hall & Byers, P.A., Saint Cloud, Minnesota, for Defendants.

---

## Introduction

This case arises out of a series of loans made by Plaintiff Midwest Agricultural Warehouse Company ("Midwest") to Defendants American Prairie, Inc. ("American Prairie"), Clayton Petersen ("Petersen"), Ryan Bushman ("Bushman"), and Green Star Agricultural Services, Inc. ("Green Star").[1] Midwest alleges that the Defendants defaulted on their loans and seeks a judgment to recover the monies owed it pursuant to the promissory notes signed by Defendants. Defendants contend that the loans were

---

[1] Although Midwest did not extend a loan to American Prairie of Iowa, Inc. ("American Prairie Iowa"), American Prairie Iowa guaranteed American Prairie's loan.

FILED JUN 21 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

made in the context of a much larger transaction between Defendants and Midwest, and that the parties were acting as joint venturers when the loans were made. Defendants have filed a counterclaim against Midwest contending, inter alia, that Midwest made false representations to Defendants and that Midwest's representations and commitments were false and constitute negligent misrepresentation. Currently before the Court is Midwest's Motion to Dismiss Counts VI and VII of Defendants' Counterclaims for failure to plead fraud with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. For the reasons stated below, the Court will grant the motion.

## Background

### I. The Parties

Midwest is a Nebraska corporation that does business in Minnesota under its own name and under the names United Agri Product MN-IA and UAP Midwest. (Defs.' Counterclaim at ¶ 2; Pl.'s Answer to Counterclaim at ¶ 3.) Defendants Petersen and Bushman are residents of Minnesota and own three Minnesota corporations, which are also defendants in this case: American Prairie, Green Star, and American Prairie Iowa. (Counterclaim at ¶ 3.) Defendants were engaged in the business of providing agricultural services to farmers and farm supply dealers related to the selection and use of agricultural seed, chemicals, and fertilizer. (Id. at ¶ 4.)

## II. Midwest's Loans

From January to August 1998, American Prairie gave Midwest three promissory notes totaling $850,000. (Answer at ¶¶ 10-12; Compl. at ¶¶ 10-12.) These promissory notes were secured by a Security Agreement dated January 4, 1996, that gave Midwest a security interest in American Prairie's personal property. (Id. at ¶ 13; id. at ¶ 13.) Midwest alleges that these notes were also guaranteed by Petersen and Bushman, Green Star, and American Prairie Iowa. (Compl. at ¶¶ 14-16.) In January 1998, Petersen and Bushman also gave Midwest a promissory note for $250,000. (Answer at ¶ 17; Compl. at ¶ 17.) This note, according to Midwest, was guaranteed by American Prairie and Green Star. (Compl. at ¶¶ 19-20.) Also in January 1998, Green Star gave Midwest a promissory note for $50,000. (Answer at ¶ 21; Compl. at ¶ 21.) Midwest alleges that the Green Star note was secured by a Security Agreement that gave Midwest a security interest in all of Green Star's personal property, and by a guarantee signed by Petersen. (Compl. at ¶¶ 23-24.) All of the above notes were scheduled to mature on January 24, 1999. (Compl. at ¶¶ 10-12, 18, and 22.)

Midwest contends that the Defendants failed to make payments when the notes matured. (Compl. at ¶¶ 25, 32, 37, and 43.) Defendants aver that these notes do not represent contemporaneous loans to them, and that they do not have an obligation to repay Midwest. (Answer at ¶¶ 10-12, 17, and 21.) According to Defendants, the promissory notes actually represent promises to repay monies provided by UAP Midwest

to American Prairie pursuant to an agreement between the parties that UAP Midwest would provide cash flow and funding to finance the expansion of American Prairie's businesses. (Counterclaim at ¶ 6H.) In return for UAP Midwest's financing, American Prairie agreed not to work with Midwest's competitors and to expand its operations and hire new personnel. (Id. at ¶ 6F and G.) The parties would then work for a buyout of American Prairie by UAP Midwest. (Id. at ¶ 6I.) As part of the buyout, the obligations of Petersen and Bushman would be discharged completely and the obligations of American Prairie would be applied to the purchase price, or paid back to Midwest if American Prairie was profitable. (Id. at ¶ 7E.)

According to Defendants, UAP Midwest funded them until the end of 1998 at which time UAP Midwest cut off all funding and began making disparaging comments about American Prairie to American Prairie's customers and employees. (Counterclaim at ¶ 13.) Midwest filed the instant suit claiming breach of contract by American Prairie, Petersen, Bushman, Green Star, and American Prairie Iowa (Counts I-V); and seeking an Order in Replevin against collateral pledged by American Prairie and Green Star (Counts VI and VII). Defendants filed a Counterclaim claiming breach of contract (Count I), breach of the obligation of good faith and fair dealing (Count II), violation of a fiduciary duty (Count III), alter ego (Count IV), promissory estoppel (Count V), and fraudulent and negligent misrepresentation (Counts VI and VII). Midwest seeks to

dismiss Counts VI and VII of the Defendants' Counterclaim for failing to plead fraud with particularity as required pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.

## Analysis

### I. Standard of Decision

Rule 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b) requirement of particularity is designed to "deter fishing expeditions of unknown wrongs designed to compel 'in terrorem settlements' and to ensure that defendants are given sufficient notice of the allegations against them." In re Digi Int'l, Inc. Sec. Litig., 6 F. Supp. 2d 1089, 1095 (D. Minn. 1998) (Tunheim, J.) (quoting Parnes v. Gateway 2000, Inc., 122 F.3d 539, 549 (8th Cir. 1997)). Rule 9(b) requires that the complaint set forth in detail such matters as the time, place, and contents of the false representations and the identity of the person making each representation. Parnes, 122 F.3d at 549. "In other words, the complaint[] must specify the 'who, what, when, where, and how' of the alleged fraud." In re Digi Int'l Sec. Litig., 6 F. Supp. 2d at 1095.

### II. Merits

The Court finds that Defendants have not satisfied the requirements of Rule 9(b) with respect to either the fraudulent misrepresentation claim or the negligent misrepresentation claim. Set forth in the Defendants' claim of fraudulent misrepresentation is an extensive list of alleged fraudulent statements made by Midwest.

Defendants do not attribute any of the statements made by Midwest to a particular person at Midwest. Nor do they aver when the statements were made, where they were made, or who made them. Defendants argue in their opposition memorandum that "[w]hen Defendant[s'] Counterclaim is read as a whole, the fraud allegations are not merely conclusory. The allegations identify the specific individuals to whom the representations were made, the specific individual who made the representation, the content of the representations, the circumstances under which the representations were made, and the time frame in which the representations were made." (Defs.' Response to Pl.'s Mot. to Dismiss at 3.) The Court has thoroughly reviewed Defendants' Counterclaim and finds none of the above allegations addressed in the Counterclaim. Defendants merely assert that a number of Midwest representatives contacted them in the fall of 1995, and that sometime between the fall of 1995 and the fall of 1998, these representatives made false representations to Defendants. (Counterclaim at ¶¶ 4-5.) The Court concludes that these general allegations of who and when do not satisfy Rule 9(b)'s requirement of specificity. In addition, Defendants fail to specify the reasons why these alleged representations were false or misleading at the time they were made.

Defendants' claim for negligent misrepresentation[2] is even less specific than its

---

[2] Defendants' negligent misrepresentation claim constitutes a fraud claim under Minnesota law. See Juster Steel v. Carlson Companies, 366 N.W.2d 616, 618 (Minn. Ct. App. 1985) (citing General Insurance Co. of Am. v. Lebowsky, 312 Minn. 370, 252 N.W.2d 252, 255 (1977)).

claim for fraudulent misrepresentation. Together with the Counterclaim as a whole, Defendants assert that the following actions constitute negligent misrepresentation:

> The representations and commitments of the as set forth above were false and constitute negligent misrepresentations by Midwest.
>
> As a result of the negligent misrepresentation of Midwest, Defendants are entitled to a determination of the Court that they have no obligation for repayment of any funds advanced by Midwest for the Defendants' business operations, and have no obligation to Midwest under the documents attached as exhibits to Midwest's Complaint.

(Counterclaim at ¶¶ 48-49.) These are simply conclusory allegations that Midwest's conduct constituted fraud, and are not sufficient to satisfy the rule. See Parnes, 122 F.3d at 549 (citing Commercial Property Invs., Inc. v. Quality Inns Int'l, Inc., 61 F.3d 639, 644 (8th Cir. 1995)).

The Court concludes, therefore, that Defendants' allegations of fraud do not give Midwest sufficient notice to permit it to prepare a defense, and do not satisfy Rule 9(b)'s requirements. Accordingly, the Court will dismiss Defendants' claims of fraudulent and negligent misrepresentation.[3]

---

[3] Defendants assert that if the Court determines that a greater degree of specificity is required, it should grant a dismissal without prejudice "with leave to the Defendants to file an amended pleading which addresses the specific issues of particularity raised by Plaintiff's motion." (Defs.' Response at 4.) The Court agrees that Defendants' Counterclaims should be dismissed without prejudice. With respect to Defendants' assertion that the Court should grant leave to amend the pleadings, the Court disagrees. Rule 15.1 of the Local Rules of the United States District Court for the District of Minnesota provides: "A party who moves to amend a pleading shall file such motion

**Conclusion**

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED** that Midwest's Motion to Dismiss Counts VI and VII of Defendants' Counterclaim (Doc. No. 11) is **GRANTED**; Counts VI and VII of the Defendants' Counterclaim are **DISMISSED WITHOUT PREJUDICE**.

June 21, 2001

Richard H. Kyle
United States District Judge

pursuant to LR 5.2 and shall attach a copy of the amended pleading to the original motion and to each copy of the motion." Because there is no motion to amend currently before the Court, the Court will not grant leave to amend the pleadings.